REED SMITH LLP
Michael J. Venditto
Jordan W. Siev
James C. McCarroll
Richard A. Robinson
599 Lexington Avenue
New York, NY  10022-7650
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email: mvenditto@reedsmith.com
          jsiev@reedsmith.com
          jmccarroll@reedsmith.com
          rrobinson@reedsmith.com

*Proposed Counsel for the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Aramid Entertainment Fund Limited,<br><br>                      Debtor. | Chapter 11<br><br>Case No.:  14-11802 |
| In re:<br><br>Aramid Liquidating Trust, Ltd. (f/k/a Aramid Entertainment Participation Fund Limited),<br><br>                      Debtor. | Chapter 11<br><br>Case No.: 14-11803 |
| In re:<br><br>Aramid Entertainment, Inc.,<br><br>                      Debtor. | Chapter 11<br><br>Case No.: 14-11804 |

**DECLARATION OF GEOFFREY VARGA**
**PURSUANT TO LOCAL RULE 1007-2**

Geoffrey Varga declares the following to be true under penalty of perjury:

1.      I, together with Jess Shakespeare, serve as the joint voluntary liquidators ("JVLs") of Aramid Entertainment Fund Limited ("AEF") and Aramid Liquidating Trust, Ltd. ("ALTL"), two of the Debtors in these Chapter 11 cases.  The Debtors[1] have each commenced voluntary Chapter 11 cases as part of an orderly asset monetization process that was initiated by AEF's and ALTL's (and its predecessor's) Boards of Directors a number of years ago, and has continued through the voluntary appointment on May 7, 2014 of the JVLs by AEF's and ALTL's voting shareholders that was recommended by their Boards of Directors.

2.      As part of our duties as JVLs, we have conducted a review of the Debtors' businesses, as well as their debt and capital structures.  Because of my resulting familiarity with the business and financial affairs of the Debtors, I am able to testify as to the matters set forth herein.

3.      I make this declaration pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York.

4.      Except where otherwise indicated, all facts set forth in this declaration are based on the results of my investigation of the Debtors and their financial affairs, my personal knowledge, or information that I have acquired from those who report to me, as well as my review of the relevant documents.  Specifically, any characterizations of the litigations described below are based solely on a review of the applicable pleadings and conversations regarding the litigation proceedings.  If called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1]  The Debtors and, if applicable and known, the last four digits of their taxpayer identification numbers are as follows: Aramid Entertainment Fund Limited; Aramid Liquidating Trust, Ltd (f/k/a/ Aramid Entertainment Participation Fund Limited); and Aramid Entertainment, Inc.   The Debtors' U.S. address is c/o Kinetic Partners, 675 Third Avenue, 21st Floor, New York, NY 10017.

## I.     THE PETITION AND MOTIONS

5.      On the date hereof (the "Petition Date"), the Debtors each filed voluntary

petitions for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101 *et seq.*

(the "Bankruptcy Code").  The Debtors are authorized to operate their businesses and manage

their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee, examiner, or committee has been appointed in these Chapter 11 cases.

6.      Contemporaneously with the filing of the petition, the Debtors are filing the

following motions and applications:

(a)      Motion for an Order Directing Joint Administration of Related Chapter 11 Cases and Authorizing the Debtors to File a Consolidated List of Creditors;

(b)      Motion for an Order Extending Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs;

(c)      Application for an Order Authorizing the Debtor to Employ and Retain Kinetic Partners (Cayman) Limited as Crisis Managers *Nunc Pro Tunc* to the Petition Date; and

(d)      Application for an Order Authorizing the Debtor to Employ and Retain Reed Smith LLP as Bankruptcy Counsel *Nunc Pro Tunc* to the Petition Date.

7.      The JVLs note that, similar to other Cayman Islands domiciled companies that

have sought protection under Chapter 11, in the future, it may be necessary for certain specific

purposes – and in any event they may deem it beneficial – to seek authority from this Court to

file a motion for supervision before the Grand Court of the Cayman Islands.

8.      The Debtors are not filing any pleadings that require a "first day" hearing.

9.      I submit this declaration in fulfillment of the requirements of Local Bankruptcy

Rule 1007-2 and to assist the Court and other interested parties in understanding the

circumstances that led to the commencement of these cases.

## II.    APPOINTMENT OF JOINT VOLUNTARY LIQUIDATORS AND CIRCUMSTANCES LEADING TO THE BANKRUPTCY FILING

10.    As explained above, on May 7, 2014, Jess Shakespeare and I became the JVLs of AEF and ALTL.  We were appointed as JVLs due to the decisions/recommendations by the respective boards of directors of AEF and ALTL to wind down those funds.  As JVLs, our primary duty is to the general body of creditors and investors of each of AEF and ALTL.  Once we were appointed as JVLs of AEF and ALTL, the powers of the directors of these funds ceased.  Thus, we are formally charged with winding up the affairs of AEF and ALTL and distributing their assets in an orderly manner under the laws of the Cayman Islands.

11.    To date, Mr. Shakespeare and I, together with our firm, in addition to certain legal advisors engaged by us, have taken steps to gain an understanding of both the assets of the Debtors, as well as a general understanding of the various litigation in which the Debtors are involved both as plaintiff and defendant.  In conducting this review, we have also attempted to ascertain the potential additional exposure to the Debtors resulting from certain current and potential legal claims against various related and affiliated third parties that may, under certain circumstances, potentially have valid indemnity claims against some or all of the Debtors under English or Cayman Islands law.

12.    Our work to date has demonstrated that the Debtors face an extraordinary burden associated with (a) the multiple litigations described below that are pending in different courts across the United States, (b) realizing the assets of the Debtors, and (c) dealing with the stakeholders of the Debtors on the application of the realization from the assets.[2]

---

[2]  ALTL has no direct business operations, but rather has the right to substantially all equity distributions that can be made from AEF through a participation agreement.  We understand that, shortly before our appointment as JVLs, all participating, non-voting shares of AEF were redeemed with participating, non-voting shares of ALTL.

13.     In order to preserve the Debtors' assets and maximize the amounts available to pay all creditors, and distribute maximum amounts to investors, we have determined to file these cases.  The protections afforded by the Bankruptcy Code will afford the JVLs an opportunity to evaluate the merits of each case described below and formulate a plan with regard to each of these litigations.

14.     If the current roster of litigation was to continue unabated, the Debtors would continue to expend a considerable portion of their resources on legal fees and litigation expenses, thereby jeopardizing the ability to maximize value.  Indeed, the accrued and payable costs to date significantly exceed the Debtors' current cash available and, while based upon former management's valuations the Debtors' assets are projected to be more than sufficient to pay all liquidated claims in full, with potentially substantial funds remaining for equity holders, the Debtors' present cash shortfall risks material impairment of the Debtors' rights and prospects for maximization of value, absent commencement of these cases.  Commencement of these cases, and the protections afforded by the Bankruptcy Code, will facilitate the development and implementation of a plan to monetize the Debtors' assets in a manner designed to maximize value.  Among other things, these bankruptcy cases will provide a forum in which the claims of creditors can be presented, evaluated and liquidated.

### III.    NATURE OF THE DEBTORS AND THEIR BUSINESSES

15.     One of the Debtors, AEF, is an investment fund organized under the laws of the Cayman Islands that provided short and medium term liquidity to producers and distributors of media and entertainment assets through loans, equity investments and other financial

investments.  AEF was established in August 2006, and its shareholders[3] have included pension funds, family offices, so-called "fund of funds" investors, and high net worth individuals.[4]

16.     One of the other Debtors, AEI, a Delaware corporation, is wholly-owned by AEF, and was involved in the U.S. activities of AEF.  However, AEF is the primary operating entity and effectively sole economic interest holder in AEI.

17.     AEF's objective was to seek attractive returns relative to returns achievable through investments in bond, equity and cash markets.  AEF sought to achieve its objective by making specialized loans to, and investments in, participants in the global media and entertainment industry.  It appears that AEF believed that its investments presented a comparatively low and measured risk, given controls and risk management techniques used by its advisers.

18.     Based on the AEF offering documents, AEF was focused on opportunities in four main areas of film finance:

(1)     AEF provided producers in need of short-term liquidity prior to the commencement of principal photography with bridge financing.  These loans generally had terms of approximately three to six months.

(2)     AEF provided advance liquidity to producers who expected to generate discounting tax credits but who are in need of funding sooner.  These loans generally had terms of approximately eighteen months.

(3)     AEF provided gap financing to producers for the uncovered amount of a motion picture's budget which remained once other sources of financing had already been taken into account.  These loans generally had terms of twelve to twenty-four months.

(4)     AEF provided producers and distributors of entertainment content with an alternative source of asset backed lending by way of a loan or equity investment in portfolios or "slates" of feature films or other forms of filmed entertainment.  Commercial terms of these studio co-financing

---

[3]  Under Cayman's Companies Law, the names and addresses of the members who hold this equity are not a matter of public record and are not available for public inspection.

[4]  As noted above, Debtor ALTL has no direct business operations, but rather has the right to substantially all equity distributions that can be made from AEF.

arrangements varied across these deals, but they typically involved a contribution of capital by third parties toward the financing of a substantial, multi-year portfolio of films, all to be produced and/or released by the studio. Under the offering documents, AEF had considerable discretion concerning the nature and terms of the transactions in which AEF engaged.

19.    Prior to my and Jess Shakespeare's appointment as JVLs, the Boards of Directors had overall control of AEF and ALTL. With our appointment as JVLs on May 7, 2014, the directors are no longer in control of, or responsible for, management of AEF and ALTL, and have no control over its assets or business. Under Cayman law, as JVLs, we are now responsible for the management of AEF and ALTL and control over their assets.

20.    The Debtors have never had any employees.

21.    The Directors of AEF were David Bree, Roger H. Hanson, Timothy Levy and Thomas McGrath.[5] When AEF was organized, it was intended that the Directors would meet regularly to review the investment and administrative affairs of AEF. The Board of Directors had ultimate oversight of the investment decisions taken on behalf of AEF.

22.    During the period prior to my appointment as a JVL, consistent with the Board of Directors' authority and pursuant to a Services Provision Agreement, the Board of Directors retained Aramid Capital Partners LLP ("ACP"), a United Kingdom partnership, as AEF's technical service provider.[6] The key members of ACP's management team included David Molner ("Molner")[7] and, for a time, Timothy Levy[8].

23.    Under this Service Provision Agreement, ACP was to provide certain services to AEF, including referring investment opportunities as it considered appropriate, preparing due

---

[5]  For a short time in 2010, Christopher Borde was also a director.
[6]  Upon information and belief, the partners of ACP included SCI, a Los Angeles based company, and Future Capital Partners, a London based entity.
[7]  Upon information and belief, Molner is the founder of SCI.
[8]  Upon information and belief, Levy is chief executive officer, founder and sole owner of Future Capital Partners.

diligence reports on potential investments and reporting on the same.  It was also intended that the board of directors would meet regularly with ACP to discuss AEF-related matters.

24.     On information and belief, ACP was owned and controlled by its members, which included Future Capital Partners, a UK provider of innovative financial products and services, and Screen Capital International ("SCI"), a Los Angeles based company specializing in structuring and facilitating cross-border tax-advantaged financing for major motion picture producers in investment vehicles involving private, public, and corporate investors on an international basis.[9]  Molner, the founder of SCI, was the lead individual involved in ACP's relationship with AEF.  ACP's engagement by AEF was mutually terminated prior to the Petition Date.

25.     Pursuant to an Administration Agreement, Admiral Administration Ltd. in the Cayman Islands, a locally licensed fund administrator, has acted as the administrator of AEF. The administrator was engaged to perform a wide range of administrative functions for AEF, including, as necessary, the processing of the issue and redemption of shares, the maintenance of AEF's registration of members, calculating the net asset value, and performing anti-money laundering procedures in respect of shareholders and the processing of the redemption of shares.

26.     Prior to the Petition Date, Asset Resolution Partners, Ltd. ("ARP"), a Cayman Islands exempted company, was retained by AEF to help monetize assets and pursue or defend certain legal proceedings. ARP reports to the JVLs in all material respects.

## IV.     CAPITAL STRUCTURE

27.     The authorized share capital of AEF is USD $50,000 and GBP £25,000, divided into the following Classes: 100 voting nonredeemable, non participating Class A Shares of par

---

[9]  Until June 30, 2011, another entity, Stonehenge Capital Company LLC, a US national specialty finance company, was also an owner of ACP.

value USD $1.00 each; 4,990,000 nonvoting redeemable participating shares of par value USD $0.01 each; and 2,500,000 nonvoting redeemable participating shares of par value GBP £0.01 each.

28.     Beginning in 2006, AEF conducted an initial private offering of Class B participating redeemable shares, Class C participating redeemable shares, Class D participating redeemable shares, and Class E participating redeemable share.

29.     All of the Class A Shares have been issued at par and, upon information and belief, are owned or controlled by ACP.

30.     On December 21, 2009, AEF suspended redemptions of its participating shares. Since the suspension, AEF's principal activities have been to facilitate the realization process with respect to its assets and distribute cash to shareholders by way of partial redemptions.

31.     Shortly before the appointment of the JVLs, upon information and belief, all of the participating, non-voting outstanding shares of AEF were compulsorily redeemed in exchange for participating, non-voting shares of commensurate value in ALTL.

## V.     EVENTS PRECEDING THESE CHAPTER 11 CASES

### A.     Litigation with David Bergstein and the Bergstein Companies

32.     One of the primary reasons for the Debtors' current liquidity concerns is the inability to collect on loans made by AEF to certain entities controlled by David Bergstein ("Bergstein") and Ronald Tutor ("Tutor"), and the numerous ancillary litigations arising from or relating to these loans.  This litigation – as well as other litigation involving AEF – gives rise not only to potential direct liability to AEF, but to contractual indemnity rights of Molner and others, which rights may be enforceable in certain circumstances such that they could require AEF to indemnify Molner and others.

33.     In addition, investors in AEF have repeatedly raised concerns with ACP, the

directors of AEF and the Cayman Islands Monetary Authority with respect to the prior actions of

ACP, including in connection with its managements of certain of the affairs of AEF including,

without limitation, the multitude of litigation that ACP has either recommended be brought on

behalf of the Debtors or which has resulted in AEF being named as a defendant which has

resulted in substantial litigation expense.  Further, AEF has been asked to provide extensive

discovery pursuant to Bankruptcy Rule 2004 in connection with the bankruptcy case of Susan H.

Tregub, P.C. ("Tregub, P.C."), former counsel to Bergstein, and also may face litigation in

connection with that bankruptcy case.  An overview of the material lawsuits affecting the

Debtors is detailed below.

### (i)     Factual Prelude to the Bergstein Litigation

34.     On information and belief, prior to December 2009, AEF had an extensive

lending relationship with certain Bergstein Companies (as defined below).  Specifically,

beginning in February 2007, AEF had engaged in approximately 36 transactions in which entities

owned or controlled by Bergstein (collectively, the "Bergstein Companies") had borrowed a total

of approximately $62.7 million from AEF.   By January 2010, AEF had recovered approximately

$20 million, leaving more than $42 million outstanding, and that debt was not being serviced by

the Bergstein Companies.

35.     During the first half of 2009, ACP, acting as the technical service provider on

behalf of AEF, attempted to restructure the Bergstein Companies' loans.  However, by mid-year,

ACP concluded that the Bergstein Companies were either unable or unwilling to conclude a

restructuring.  At the same time, ACP learned that the Bergstein Companies were similarly

indebted to D.B. Zwirn Special Opportunities Fund ("D.B. Zwirn"), a New York investment

fund, for approximately $100 million[10], and had agreed on the terms of a restructuring of that

debt but then defaulted.  ACP, on delegated authority from the Board of Directors, therefore

decided to foreclose on the available collateral, which consisted largely of motion picture films

and associated exploitation rights.  Accordingly, by December 2009, AEF had foreclosed on two

film titles, "$5 a Day" and "Love Ranch".

36.    ACP concluded that the Bergstein Companies had begun to transfer some of their

film rights to entities owned or controlled by Tutor, a process that could leave AEF with claims

against entities that had no assets.  Although Tutor apparently gave some consideration for these

transfers, ACP took the position that the value given by Tutor was not reasonably equivalent to

the value of the transferred assets.  If these facts were proven correct, the asset transfers would

have constituted fraudulent transfers that could be set aside either by unsecured creditors or a

bankruptcy trustee.

### B.    Other Pending Litigation

37.    Over the last several years, AEF has been embroiled in substantial and time-

consuming litigation relating to some of its investments.  The prosecution and defense of these

actions has consumed a substantial portion of AEF's liquidity and exposes it to potential liability

in several ways.

### (i)    The Lawsuit Against Bergstein and Tutor as Guarantors, and the Involuntary Bankruptcy Cases

38.    On March 16, 2010, AEF and Cayman Film Holdings Ltd., a wholly-owned

subsidiary of AEF, filed a suit in the United States District Court in Los Angeles against

Bergstein and Tutor, individually, seeking to collect approximately $12 million owed on

---

[10]  On November 2, 2009, D.B. Zwirn filed a complaint against Bergstein and Tutor in the Superior Court in Los Angeles.  *D.B. Zwirn Special Opportunities Fund v. David R. Bergstein and Ronald N. Tutor*, Superior Court Case No. BC425112.  In the complaint, D.B. Zwirn sought to collect on guaranties made by Bergstein and Tutor of tens of millions of dollars of loans that Zwirn had made to CT-1.

guaranties of loans made to finance motion pictures known as "Love Ranch" and "Bad Meat".
*Aramid Entertainment v Bergstein*. Case No. 2:10-cv-01881-JFW-PLA.  In answering that
complaint, Bergstein and Tutor conceded that they had guaranteed these loans.  However, they
alleged that AEF had charged unlawful interest based on false representations that it was a
licensed California finance lender.

39.     One day after commencing litigation against Bergstein and Tutor to enforce
guaranties, on March 17, 2010, involuntary bankruptcy petitions (initially filed by a group of 13
creditors that subsequently increased to 27 creditors) were filed in the U.S. Bankruptcy Court in
Los Angeles with respect to certain of the Bergstein Companies.[11]  These bankruptcy cases have
been extraordinarily contentious and litigious.

40.     On December 30, 2011, AEF, acting jointly with several other creditors, filed
liquidation plans for each of the debtors in those cases (collectively, the "Plans") together with
the requisite disclosure statements for each of the Plans.  An amended disclosure statement that
the Plan's proponents filed on April 17, 2012, provided a compendium of the theories being
pursued:

> Bergstein and the Debtors have played a shell game with the Debtors' Assets such
> that it is extremely difficult to determine who owned and had an interest in the
> Debtors Assets at any given point in time and equally challenging to establish
> who currently owns or has an interest in the Debtors' Assets. … The repeated use
> of newly formed shell companies with names that are deliberately and
> confusingly similar to the names of existing companies controlled by the Debtors
> and/or their Affiliates appears to be part of the game.

Amended Proposed Disclosure Statement at 65-66.

---

[11]  The bankruptcy cases, all of which are pending in the United States Bankruptcy Court for the Central District of
California (Los Angeles division) are: (i) *In re ThinkFilm, LLC*, Case No. 2:10-bk-19912-BR; (ii) *In re R2D2, LLC*,
Case No. 2:10-bk-19924-BR; (iii) *In re CT-1 Holdings, LLC*, Case No. 2:10-bk-19927-BR; (iv) *In re Capco Group,
LLC*, Case No. 2:10-bk-19929-BR; and (v) *In re Capitol Films Development, LLC*, Case No. 2:10-bk-19912-BR.

41.     The Bankruptcy Court has never approved the disclosure statement.  Instead, at

the recommendation of ACP, the technical service provider, AEF has litigated, or as applicable,

funded additional proceedings, both in the Bankruptcy Court and other courts, in an effort to

collect the monies owed by the Bergstein Companies.

42.     While AEF is not now a party to any of the ongoing proceedings in the California

Bankruptcy Court, these proceedings are one portion of its collection efforts.

43.     In October 2012, AEF, Aramid Entertainment B.V., a wholly-owned, non-debtor

subsidiary of AEF, and Screen Capital International Corp. ("SCIC"), together with certain

affiliated parties and counsel (collectively, the "Settling Parties"), entered into an agreement

which included the release of any and all claims by the Trustee on behalf of debtors in the

pending bankruptcy cases, the R2D2 companies, against the Settling Parties, and the

subordination of the claims of the Settling Parties to the claims of other legitimate creditors

against the debtors in those cases.  In exchange for this release by the bankruptcy estates, SCIC

agreed, *inter alia*, to pursue certain litigation against third parties owned and/or controlled by

Bergstein and/or Tutor on a derivative basis.

44.     The Bankruptcy Court approved the Settlement by an order dated May 6, 2013.

Bergstein appealed this order, but on January 6, 2014, the District Court affirmed the order of the

Bankruptcy Court approving the settlement.

45.     During the last quarter of 2012 and first quarter of 2013, certain statutes of

limitation regarding the avoidance of fraudulent and/or preferential transfers were to expire

unless action was taken.  SCIC entered into a series of stipulations with the Trustee allowing

SCIC to pursue such avoidance actions on behalf of the debtors' bankruptcy estates on a

derivative basis.  Those stipulations were approved by the bankruptcy court, and multiple

complaints were filed within the relevant statutes of limitation. Although SCIC is the entity

pursuing the claims, AEF has been advancing the cost of such litigation, and any recoveries, as

described in the court-approved stipulations, will be distributed to SCIC and creditors of the

relevant bankruptcy estates. A number of the entities sued are owned, controlled and/or related

to Bergstein.

### (ii)   Beverly Litigation

46.     AEF has been pursuing litigation against Fortress Investment Group and other

defendants in a California state court action commenced in 2012, (*Aramid Entertainment Fund

Limited et al. v. Fortress Investment Group LLC et al.,* Los Angeles Superior Court case No.

BC478589), and against KBC Bank, N.A. in a New York state court action filed in 2013 (*Aramid

Entertainment Fund Limited v. KBC Bank, N.V. et al.*, Supreme Court of New York, County of

New York, Index No. 652428/2013). These actions are based on allegations of wrongful

interference by various defendants in a financing transaction in which AEF provided partial

financing for a slate of films (the "Beverly Slate") where AEF's interest was allegedly worth at

least $44 million (the "Beverly Litigation"). AEF is pursuing litigation seeking to recover at

least this amount from the defendants.

47.     The California action is in the discovery phase after defendants' demurrers

seeking to dismiss the action were overruled as to most causes of action. On September 9, 2013

Judge Barbara M. Scheper scheduled August 18, 2014 as the trial date for the matter. The parties

are actively involved in discovery. The defendants have sought a delay of the trial, which AEF

vigorously has opposed, while the action against KBC was dismissed.

### (iii)   ThinkFilm Release Litigation

48.     *David Bergstein/Graybox, LLC, et al. v. Aramid Entertainment Fund, et al*. was

commenced in California on June 21, 2012, alleging ten different tort and contract causes of

action against AEF relating to a $2.5 million participation in a loan extended by D.B. Zwirn as part of a larger facility intended to finance the 2006 acquisition of 'ThinkFilm', which was then one of the largest remaining independent film distributors in North America.  In connection with the repayment of that loan, AEF executed a settlement agreement and release.  The scope of the release is at issue in the litigation.  In particular, the plaintiffs allege that, in spite of the release, AEF and other defendants commenced litigation against the plaintiffs alleging claims that had been released under the settlement agreement.

49.     On October 5, 2012, the plaintiffs filed a First Amended Complaint, alleging two causes of action for breach of contract and breach of an implied covenant of good faith and fair dealing.  AEF and the other defendants filed an Anti-SLAPP motion, which the Court granted on July 31, 2013.  The plaintiffs then filed a motion for reconsideration, which the Court denied, resulting in dismissal of the action, and awarding attorneys' fees and costs incurred as a result of the motion.  The plaintiffs have filed an appeal, which is now pending.

### (iv)     Wimbledon Litigation

50.     This case was originally filed in 2011 in Los Angeles Superior Court.  In essence, two investors in AEF, Wimbledon Financing Master Fund, Ltd. and Stillwater Market Neutral Fund III SPC, asserted claims based on AEF's suspension of distributions, AEF's failure to transfer their shares, alleged misrepresentations in the AEF Offering Memorandum and alleged self-dealing by Molner, ACP and SCI.  The case was removed to federal court in Los Angeles under the Federal Arbitration Act.  The District Court denied the motion to compel arbitration.  That decision was appealed to the Ninth Circuit.  The appeal is currently under submission in the Ninth Circuit.

### (v)    Gerova – New York

51.    This New York State Supreme Court litigation involved claims asserted by AEF against Gerova, Wimbledon, David Bergstein, Joseph Bianco and others arising out of their interference with the potential purchase of AEF's assets by ABRY Partners.  Following defendants' motions to dismiss, AEF's complaint was dismissed.  The claims against all defendants other than David Bergstein were dismissed for failure to state a claim upon which relief could be granted, while the claims against Bergstein were dismissed for lack of personal jurisdiction.  AEF appealed the trial court's decision to the New York Supreme Court's Appellate Division.  On April 30, 2013, the Appellate Division, First Department affirmed the decision dismissing AEF's complaint.  On May 30, 2013, AEF filed a motion seeking either reargument or permission to appeal to the Court of Appeals, which was denied on September 13, 2013.  AEF's subsequent application for leave to appeal that decision was also denied.  The filing of this action is the predicate for malicious prosecution actions filed against AEF and others in New York Supreme Court in April 2014 (*Bergstein v. Aramid Entertainment Fund, Ltd. et al.*, Supreme Court of New York, County of New York, no. 651298/2014 and *Bianco v. Aramid Entertainment Fund, Ltd. et al.*, Supreme Court of New York, County of New York, no. 651317/2014).

### (vi)    Bergstein/Tutor Entities Litigation

52.    *AEFL, Cayman Film Holdings, Ltd. vs. David Bergstein, Bontempo Holdings LLC, et al.,* (Los Angeles Superior Court case no. BC437131) is a collection action filed against various Bergstein, Tutor and Bergstein-related defendants for debts owed to AEF.  Bergstein and Tutor interposed a cross-claim against AEF alleging tortious interference and aiding and abetting the alleged breach of fiduciary duty by Bergstein's former attorney, Tregub.

53.     On August 7, 2012, AEF and certain related parties filed a motion for judgment on the pleadings as to these cross-claims.  On October 3, 2012, the court granted this motion on the grounds that (1) federal law pre-empts state law tort claims arising from the filing of an involuntary bankruptcy and (2) the claims were barred by the litigation privilege.  Bergstein and Tutor were granted leave to amend and served an amended cross complaint on or about November 2, 2012.  The cross complaint alleged multiple tort causes of action arising out of the alleged aiding and abetting of Tregub's breach of her duties to her former employer and making use of confidential information.  AEF and other defendants filed a motion to dismiss, which the court granted on September 16, 2013.  The only remaining causes of action against AEF are for violation of the California Commercial Code and for certain declaratory relief.  However, Bergstein and Tutor have filed a Notice of Appeal from the September 16, 2013 decision.

54.     In addition, Bergstein and Tutor filed a motion for summary judgment seeking dismissal of claims for breach of contract and alter ego, arguing that these claims had been released under the terms of the ThinkFilm settlement agreement and Release.  That motion was denied in April 2014.  A trial date is set for February 12, 2015.

55.     Bergstein also obtained a jury award in the amount of $50 million against Tregub based on her breach of duties to him and his affiliated entities.  Tregub (personally) and  Tregub, P.C. both have filed for bankruptcy protection and, as noted earlier, the trustee in the Tregub, P.C. case is seeking Bankruptcy Rule 2004 discovery from AEF and may pursue claims against it.

### (vii)   Bergstein/Parmar Litigation

56.     On May 14, 2013, Bergstein and Pineboard Holdings Inc. filed a complaint against, *inter alia*, Parmjit Singh Parmar ("Parmar") (an individual who had business dealings

with Bergstein), AEF, Molner and two other entities. *David Bergstein, et al. vs. David Molner, et al.* – Los Angeles Superior Court, case no. BC508916.

57.     This complaint alleged "civil extortion" claims against Parmar and further alleged that the other defendants had aided, abetted and conspired to commit such civil extortion. The complaint also asserted that Parmar had attempted to extort money from Bergstein by threatening to make criminal allegations against Bergstein and report him to Federal authorities. It also alleged that Parmar had threatened to disclose confidential and damaging information about Bergstein to Molner which would allegedly aid Molner in various other lawsuits. The complaint, which asserted that Molner and the other defendants had encouraged Parmar in his extortion attempt, seeks damages in an unspecified amount. Molner, AEF and the other defendants are scheduled to file special motions to strike and/or demurrers, which are scheduled to be heard on November 24, 2014.

## VI.    INFORMATION REQUIRED BY LOCAL RULE 1007-2

58.     Local Rule 1007-2 requires that a Debtor provide certain information.

59.     The information required by Local Rule 1007-2(a)(1) is set forth above.

60.     To the extent applicable to these cases, the remaining information required by Local Rule 1007-2 is set forth in the schedules contained in Exhibit A annexed hereto.

## VII.    CONCLUSION

For all of the reasons set forth herein, I respectfully submit this Declaration pursuant to Local Rule 1007-2.

Dated:    June 13, 2014
          New York, New York

_____
Geoffrey Varga

## **EXHIBIT A**

**(Information Required by Local Rule 1007-2)**

**Schedule 1 – Holders of the Debtors' 20 Largest Unsecured Claims**

Pursuant to Local Rule 1007-2(a)(4), the following lists information with respect to the holders of the 20 largest unsecured claims (not including claims of insiders) against the Debtors.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserves all rights to assert that any debt or claim listed herein is a disputed claim or debt, and to challenge, the priority, nature, amount, or status of any such claim or debt. In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control. The schedule estimates outstanding claim amounts as of the Petition Date.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to set off | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| Iron Cove Solutions | Iron Cove Solutions<br>612 East Franklin Avenue, Suite A<br>El Segundo, CA 90245<br>Tele # 310 823 2047<br>Email: ar@ironcovesolutions.com | Professional services | | $20.00 |
| Zen Internet, Ltd. | Zen Internet, Ltd<br>Sandbrook Way<br>Sandbrook Park<br>Rochdale<br>OL11 1RY<br>United Kingdom<br>Tele # 0845 058 9000<br>Fax # 0845 058 9129<br>Email: statements@zen.co.uk | Administrative services | | $418.19 |
| Meeting Zone, Ltd. | Meeting Zone, Ltd.<br>Oxford House<br>Oxford Road<br>Thame<br>Oxfordshire OX9 2AH<br>United Kingdom<br>Tele # 0845 310 5050 and<br>+44 1 844 265 518<br>Fax # +44 1 844 265 545<br>Email: finance@meetingzone.com | Administrative services | | $632.13 |
| Baker & McKenzie | Baker & McKenzie<br>Paseo de la Castellana, 92<br>28046 Madrid<br>Spain<br>Tele # +34 91 230 45 00<br>Fax # +34 91 391 51 49<br>Attention: Jose Maria Mendez | Professional services | | $508.92 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to set off | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| Loyens & Loeff | Loyens & Loeff, N.V.<br>Postbus 71170<br>1008 BD Amsterdam<br>The Netherlands<br>Tele # +31 20 578 53 39<br>Fax # +31 20 578 58 43<br>Attention: Yvonne van Beek<br>Email:<br>yvonne.van.beek@loyensloeff.com | Professional services | | $3,564.41 |
| Tysers | Tyser<br>Beaufort House<br>15 St. Botolph Street<br>London EC3A 7EE<br>United Kindom<br>Tele  # 020 3037 8000<br>Fax # 020 3037 8010<br>Attention: John Walsh | Professional services | | $9,082.00 |
| The Law Offices of Steven Goldsobel | The Law Offices of Steven Goldsobel<br>1900 Avenue of the Stars, Suite 1800<br>Los Angeles, CA 90067<br>Tele # 310 552 4848<br>Fax # 310 552 9291<br>Attention: Steven Goldsobel<br>Email: steve@sgoldsobel.com | Professional services | | $12,367.01 |
| McDermott Will & Emery | McDermott Will & Emery<br>2049 Century Park East, Suite 3800<br>Los Angeles, CA 90067<br>Tele # 310 277 4110<br>Attention: Charles Weir<br>Email: cweir@mwe.com | Professional services | | $41,631.19 |
| Mourant Ozannes | Mourant Ozannes<br>94 Solaris Avenue<br>Camana Bay<br>P.O. Box 1348<br>Grand Cayman KY1-1108<br>Cayman Islands<br>Tele # +1 345 949 4123<br>Fax # +1 345 949 4647<br>Attention: Nicholas Fox<br>Email:<br>Nicholas.fox@mourantozannes.com | Professional services | | $60,849.18 |
| Guidepost Solutions, LLC | Guidepost Solutions, LLC<br>415 Madison Ave, 11th Floor<br>New York, NY 10017<br>Tele # 212 817 6700<br>Attention: Andrew O'Connell<br>Email:<br>aoconnell@guidepostsolutions.com | Professional services | | $69,098.01 |
| Weinberg Zareh & Geyerhahn, LLP | Weinberg Zareh & Geyerhahn, LLP<br>1221 Avenue of the Americas, 42nd Floor<br>New York, New York 10020<br>Tel: (212)899-5470<br>Attention: Omid Zareh<br>Email: Omid@wzgllp.com | Professional services | | $123,163.00 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to set off | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| Admiral Administration, Ltd. | Admiral Administration, Ltd<br>Admiral Financial Centre<br>90 Fort Street<br>P.O. Box 32021<br>Grand Cayman KY1-1208<br>Cayman Islands<br>Tele # +1 345 949 0704<br>Fax # +1 345 949 0705<br>Attention: Scott Boutilier<br>Email:<br>scott.boutilier@admiraladmin.com | Professional services | | $132,861.00 |
| BDO USA, LLP | BDO USA, LLP<br>1888 Century Park East, 4th Floor<br>Los Angeles, CA 90067<br>Tele # 310 557 0300<br>Fax # 310 557 1777<br>Attention: Elie Kurtz<br>Remittance details:<br>P.O. Box 31001-0860,<br>Pasadena, CA 91110-0860 | Professional services | | $265,392.46 |
| Levene, Neale, Bender, Yoo & Brill, LLP | Levene Neale Bender Yoo & Brill, LLP<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA 90067<br>Tele # 310 226 1234<br>Fax # 310 229 1244<br>Attention: David Neale<br>Email: DLN@lnbyb.com | Professional services | | $707,514.49 |
| Jeffer Mangels Butler & Mitchell, LLP | Jeffer Mangels Butler & Mitchell, LLP<br>1900 Avenue of the Stars, Seventh Floor<br>Los Angeles, CA 90067<br>Tel: (310)203-8080 / Fax: (310)203-0567<br>Attention: David Stern<br>Email: DBS@JMBM.com | Professional Services | | $990,510.26 |
| Stroock & Stroock & Lavan, LLP | Stroock Stroock & Lavan, LLP<br>2029 Century Park East<br>Los Angeles, CA 90067<br>Tele # 310 556 5872<br>Attention: Michael Newtown (Billing Coordinator, Accounts Receivable) and Sky Moore, Esq.<br>Emails: smoore@stroock.com and mnewtown@stroock.com | Professional services | | $2,303,788.40 |

## Schedule 2 – Holders of the Debtors' 5 Largest Secured Claims

Pursuant to Local Rule 1007-2(a)(5), the following lists the Debtors' five largest secured claims on a consolidated basis.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.  The Debtors reserve all rights to assert that any debt or claim listed herein is a disputed claim or debt, and to challenge, the priority, nature, amount, or status of any such claim or debt.  In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.  The schedule estimates outstanding claim amounts as of the Petition Date.

| Name of creditor | Address | Amount of claim | Brief description and an estimate of the value of the collateral securing the claim | Whether the claim or lien is disputed |
| --- | --- | --- | --- | --- |
| None. | | | | |
| | | | | |
| | | | | |
| | | | | |

**Schedule 3 – Summary of Debtors' Assets and Liabilities**

Pursuant to Local Rule 1007-2(a)(6), the following financial data (unaudited) is the latest available information and reflects the Debtors' financial condition, as of April 29, 2014.  The following financial data shall not constitute an admission of liability by the Debtors.  The Debtors reserve all rights to assert that any debt or claim included herein is a disputed claim or debt or challenge the priority, nature, amount, or status of any claim or debt.

<u>AEF</u>

Total Assets (Book Value):  $186,603,593.83

Total Liabilities:  $10,400,000

Total Members' Equity:  $83,592,597.37

<u>ALTL</u>

Total Assets (Book Value):  $50,699,361.73

Total Liabilities:  $1,000,000

Total Members' Equity:  $32,376,941.11

<u>AEI</u>

Total Assets (Book Value):  $0

Total Liabilities:  $50,000

Total Members' Equity:  $0

**Schedule 4 – Schedule of Publicly Held Securities**

Pursuant to Local Rule 1007-2(a)(7), the following lists the number and classes of shares of stock, debentures, or other securities of the Debtors that are publicly held, and the numbers of holders thereof, listing separately those held by each of the Debtors' officers and directors and the amounts so held.

| Security | Number of Shares Outstanding | Number of Holders |
|---|---|---|
| None. | | |

| Officer or Director | Security | Number of Shares |
|---|---|---|
| None. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Schedule 5 – The Debtors' Property Not in the Debtor's Possession**

Pursuant to Local Rule 1007-2(a)(7), the following lists all of the Debtors' property in the possession or custody of a custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

None.

## Schedule 6 – The Debtors' Premises

Pursuant to Local Rule 1007-2(a)(9), the following lists the premises owned, leased, or held under other arrangement from which the Debtors operates their business as of the Petition Date.

Office of Joint Voluntary Liquidators, Kinetic Partners, 675 Third Avenue, 21st Floor, New York, NY 10017 and Kinetic Partners (Cayman) Limited, 42 North Church Street, Grand Cayman, Cayman Islands.

### Schedule 7 – Location of the Debtors' Assets, Books, and Records

Pursuant to Local Rule 1007-2(a)(10), the following lists the locations of the Debtors' substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

### Location of Debtor's Substantial Assets

The Debtors' substantial assets consist of the ownership of intellectual property, claims, and other intangibles which are located at Kinetic Partners, 675 Third Avenue, 21st Floor, New York, NY 10017 and Kinetic Partners (Cayman) Limited, 42 North Church Street, Grand Cayman, Cayman Islands.

### Books and Records

The Debtors' books and records are located at Kinetic Partners, 675 Third Avenue, 21st Floor, New York, NY 10017 and Kinetic Partners (Cayman) Limited, 42 North Church Street, Grand Cayman, Cayman Islands.

### Debtors' Assets Outside the United States

The Debtors' assets outside the United States are listed below.

| Nature | Location | Value |
|---|---|---|
| AEFL royalties from contracts related to various films | Various | Undetermined |
| Participation Agreement, dated May 1, 2014, between AEF and ALT | Cayman Islands | Undetermined |

**Schedule 8 – Litigation**

Pursuant to Local Rule 1007-2(a)(11), the following is a list of the nature and present status of each action or proceeding, pending or threatened against the Debtors or their properties. This list reflects all actions or proceedings currently pending against the Debtors. This list also includes litigation involving the Debtors' affiliates. The Debtors reserves the right to revise this list in the corresponding Schedules to be filed by the Debtors in these Chapter 11 cases.

| PLAINTIFF | DEFENDANT | COMPLAINT FILED | CASE NUMBER | LOCATION | NATURE OF PROCEEDING AND STATUS |
|---|---|---|---|---|---|
| Aramid Entertainment Fund Ltd. ("AEF"), Aramid Entertainment B.V. ("ABV"), Cayman Films Holdings Ltd. | David Bergstein ("Bergstein"), Bontempo Holdings LLC, Bontempo Productions LLC, Capco Group LLC, Capitol Films Ltd., Capitol Films US LLC, De Lane Lea (Post Production) Ltd., Film Rights Holding Co. LLC, Cerulean Productions LLC, Tenderloin Holdings LLC, CG Acquisitions LLC, ThinkFilm LLC, Library Asset Acquisition Co., Ltd., IM Junior Debt Holding Co. LLC | 1. 5/4/2010 (original complaint)  2. 5/13/2010 (FAC filed)  3. 9/24/2010 (SAC filed) | BC437131  (Action originally filed in U.S. District Court, Central District of California on 3/16/2010, No. CV10-01882-SJO (AGRx)) | Superior Court of California, County of Los Angeles | Breach of contract action to collect unpaid amounts.  Cross claims asserted against AEF regarding payment obligations; certain claims dismissed. AEF currently opposing appeal of dismissal.  Matter in discovery phase, with trial set for February 2015. |
| AEF, Screen Capital International Corp. ("SCI"), Aramid Capital Partners LLP ("ACP"), David Molner ("Molner"), et al. | ThinkFilm LLC, CapCo Group LLC, Capitol Films Development LLC, R2D2 LLC, CT-1 Holdings LLC | Petitions filed 3/17/2010 | 2:10-bk-19912-BR; 2:10-bk-19929-BR; 2:10-bk-19938-BR; 2:10-bk-19924-BR; 2:10-bk-19927-BR | U.S. Bankruptcy Court, Central District of California | Involuntary bankruptcies of Bergstein entities and adversary proceedings relating thereto.  AEF adversary and administrative claims mostly dismissed.  AEF currently appealing disallowance of claims to both the Ninth Circuit and the District Court. |

| | | | | | |
|---|---|---|---|---|---|
| Wimbledon Financing Master Fund, Ltd., Stillwater Market Neutral Fund III SPC | AEF, SCI, ACP, Molner, Timothy Levy, David Bree, Roger Hanson, Thomas McGrath, Thomas Adamek, Stonehenge Capital Company LLC, Future Capital Partners, Ltd. | 1. 7/22/2011 (original complaint – Cal. Super. Ct. No. BC466001)<br><br>2. 10/24/2011 (FAC filed)<br><br>3. 4/26/2012 (SAC filed) | 2:11-cv-07695-GW-E<br><br><br>No. 12-56328 – Ninth Cir. Appeal (filed 7/19/2012) | U.S. District Court, Central District of California | Action by AEF shareholders based on, *inter alia*, suspension of distribution rights.<br><br>Action stayed pending appeal by non-AEF defendants to Ninth Circuit of denial of motion to compel arbitration. |
| AEF, Aramid Grantor Trust | Fortress Investment Group LLC, CF Film Finance AB LLC, Relativity Media LLC, Relativity Media Holdings I LLC, Beverly Blvd LLC, Lord Securities Corp. | 1. 2/8/2012 (original complaint)<br><br>2. 1/18/2013 (FAC filed) | BC478589 | Superior Court of California, County of Los Angeles | Breach of contract action and cross-claim asserted against AEF.<br><br>Matter in discovery phase, with trial set for August 18, 2014. |
| Bergstein, Graybox LLC, MM Media Acquisition Co. Ltd., TFC Library LLC, Zoopraxis LLC, FPLAC LLC, Pangea Media Group LLC, Pangea Media Holdings Ltd. | AEF, ABV, Cayman Film Holdings Ltd., ACP, SCIC, Jenco Capital Corp., Molner, Future Capital Partners Ltd., Roger Hanson, Timothy Levy, Stonehenge Capital Co., Thomas Adamek, Thomas McGrath, David Bree, Orange Trust (Netherlands) B.V. | 1. 6/21/2012 (original complaint)<br><br>2. 10/5/2012 (FAC filed) | BC487059 | Superior Court of California, County of Los Angeles | Action asserting numerous contract-based claims, tortious interference claims, as well as a claim for promissory fraud.<br><br>Action dismissed as to AEF; dismissal currently being appealed. |
| AEF | Bergstein | 3/19/2013 | CV 13-01952-SS | U.S. District Court, Central District of California | Breach of contract action.<br><br>AEF summary judgment motion granted on June 2, 2014, pending further submissions on damages amount. |

| Bergstein, Pineboard Holdings, Inc. | Parmjit Parmar, Molner, AEF, SCI, ACP | 5/14/2013 | BC508916 | Superior Court of California, County of Los Angeles | Action for extortion, aiding and abetting extortion, and conspiracy to commit extortion.<br><br>Hearing on plaintiffs' discovery motion scheduled for August 12, 2014 and hearing on motion to dismiss scheduled for November 24, 2014. |
|---|---|---|---|---|---|
| AEF | KBC Bank N.V., KBC Bank N.V. New York Branch, KBC Investments Cayman Islands V Ltd., KBC Financial Products USA Inc., KBC Financial Products UK Ltd., KBC Investments Ltd., Charles, Frederic & Co. LLC, Stillwater Market Neutral Fund III SPC, Stillwater Matrix Segregated Portfolio | 7/10/2013 | 652428/2013 | Supreme Court of the State of New York, County of New York | Action seeking injunctive and declaratory relief, as well as asserting claims for breach of contract, tortious interference with contract, and misappropriation.<br><br>All claims against KBC entities were dismissed on April 29, 2014. All other claims are still pending. |
| Bergstein | AEF, ACP, SCI, Molner | 4/28/2014 | 651298/2014 | Supreme Court of the State of New York, County of New York | Recently commenced malicious prosecution action. |
| Joseph Bianco | AEF, ACP, SCI, Molner | 4/29/2014 | 651317/2014 | Supreme Court of the State of New York, County of New York | Recently commenced malicious prosecution action. |

## Schedule 9 – Senior Management

Pursuant to Local Rule 1007-2(a)(12), the following provides the names of the individuals who comprise the Debtors' existing senior management and a brief summary of their relevant responsibilities and experience.

| Name | Title | Relevant Responsibilities and Experience |
|------|-------|------------------------------------------|
| Geoffrey Varga | Joint voluntary liquidator of Aramid Entertainment Fund Limited and Aramid Entertainment Participation Fund | Partner at Kinetic Partners, and the global head of Kinetic Partners' Corporate Recovery and Restructuring group. |
| Jess Shakespeare | Joint voluntary liquidator of Aramid Entertainment Fund Limited and Aramid Entertainment Participation Fund | Partner in Kinetic Partners' Corporate Recovery and Restructuring group. |

**Schedule 10 – Payroll**

Pursuant to Local Rules 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Debtor's employees (exclusive of officers, directors, stockholders, and partners) for the 30 day period following the Petition Date.

| | |
|---|---|
| Estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders, and partners) for the 30 day period following the Petition Date | None. |
| The amount paid and proposed to be paid for services for the 30 day period following the Petition Date to the Debtor's officers, stockholders, and directors | None. |
| The amount paid and proposed to be paid for services for the 30 day period following the Petition Date to the Debtor's chief restructuring officer | None. |

## Schedule 11 – Cash Receipts and Disbursements, Net Cash Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Rule 1007-2(b)(3), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees, for the 30 day period following the Petition Date.

| | |
|---|---|
| Cash Receipts | $0 |
| Cash Disbursements (other than professional fees) | $25,000 |
| Net Cash Loss (excluding professional fees) | $0 |
| Unpaid Obligations (excluding professional fees) | $0 |
| Unpaid Receivables | $0 |